IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FERMER PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-462-WKW |
| | ) | [WO] |
| LVNV FUNDING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action arises primarily under the Fair Debt Collection Practices Act ("FDCPA"), which Congress enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Before the court are Defendant LVNV Funding, LLC's motion for summary judgment (Doc. # 15), which has been fully briefed (Docs. # 26, 31), Plaintiff Fermer Prince's motion to strike certain affidavit testimony submitted by LVNV, as amended (Docs. # 16, 25), which has been briefed (Docs. # 17, 19, 24, 30), and LVNV's motion to strike the Affidavit of William Azar (Doc. # 29), also with complete briefing (Doc. # 35, 38). Upon consideration of the parties' arguments, the evidence, and the relevant law, the court finds that the motions are due to be denied.

# I.  JURISDICTION AND VENUE

The court has subject-matter jurisdiction over Ms. Prince's claims pursuant to 28 U.S.C. §§ 1331 and 1367 and 15 U.S.C § 1692k(d).  Personal jurisdiction and venue are uncontested.

# II.  STANDARDS OF REVIEW

## A.  <u>**Motions to Strike**</u>

Ms. Prince's original motion to strike certain affidavit testimony (Doc. # 16) does not identify the rule authorizing the relief that she seeks.  Thus, the court will consider the motion to strike as a notice of Ms. Prince's objection to the testimony. *See Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1328 (M.D. Ala. 2002) (taking same approach); *see also* Fed. R. Civ. P 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  The objections will be entertained prior to consideration of LVNV's motion for summary judgment, which relies on the affidavits.

In Ms. Prince's amended motion to strike (Doc. # 25), Ms. Prince complains that untimely disclosed expert opinions are offered in the affidavits.  Federal Rule of Civil Procedure 37(c) "provides the consequences for a party's failure to disclose, pursuant to the requirements of Rule 26."  *Nance v. Ricoh Elecs, Inc*., 381 F. App'x 919, 922 (11th Cir. 2010).  "If a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

In LVNV's motion to strike (Doc. # 29), it objects to Mr. Azar's testimony on the grounds that it is not based on his personal knowledge, it invades the court's province of making legal conclusions, and is disallowed by the Alabama Rules of Professional Conduct.  Like Ms. Prince's motion to strike, LVNV's motion to strike will be treated as an objection.  *See Norman*, 191 F. Supp. 2d at 1328.

## B.   <u>Motion for Summary Judgment</u>

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  Or a movant who does not have a trial burden of production

can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III.  BACKGROUND

A.  <u>Facts</u>

Ms. Prince alleges that LVNV is a debt collector within the meaning of the FDCPA. (Compl., at ¶ 25.) LVNV denies that it is a debt collector. (Ans., at ¶ 25.) It maintains that it holds debts purchased from original creditors, but it does not directly collect on the debts or contact debtors. (*See* Aff. LVNV Funding,

LLC (Doc. # 15-1).)   LVNV's dispute of its status as a debt collector is not a contention asserted in support of its motion for summary judgment.[1]

Ms. Prince's alleged debt originated with Citibank in 1996 as a Sears MasterCard account.   Years later, the account went into default, and Citibank sold the debt in August 2010 to Sherman Originator III, LLC.   (*See* Doc. # 26-3.) LVNV subsequently acquired ownership of the debt.

On July 16, 2012, LVNV employed Zarzaur & Schwartz, a Birmingham law firm, to sue Ms. Prince in Montgomery County District Court[2] to collect $2,465.85, plus costs of $126.00.   LVNV furnished Zarzaur & Schwartz with an account number from Citibank, the date that the account was opened (September 1, 1996), the charge-off date, the amount outstanding, and Fermer I. Prince's name, phone number, and home address.   (Aff. Ben Zarzaur (Doc. # 15-2).)   LVNV says that it also furnished an affidavit to Zarzaur & Schwartz attesting to its ownership of the

---

[1] While it does not appear that the Eleventh Circuit has addressed the issue, other courts have held that "one attempting to collect a debt is a 'debt collector,'" as opposed to a creditor, "if the debt in question was in default when acquired."   *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) (citing 15 U.S.C. § 1692a); *see also Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1301 (N.D. Ga. 2010) (reaching the same conclusion).   Hence, "debt buyers" like LVNV are considered debt collectors rather than creditors even though they own the debt.

[2] Montgomery County District Court is often called "small claims court" in the parties' briefing.   Small claims court is a function of the state district court in Alabama.   *See* Ala. Code § 12-12-31.

debt and to the amount due,[3] as well as several Sears MasterCard account statements bearing Ms. Prince's name and address from 2009 and 2010. Ms. Prince alleges that this information was legally insufficient to entitle LVNV to a judgment, and she alleges that LVNV brought the suit with knowledge that its evidence was lacking and with knowledge that she disputed the debt.

Ms. Prince says that she communicated with LVNV, after receiving a letter and prior to the initiation of the collection suit, to deny her obligation for the debt. (*See* Doc. # 15-3, at ¶ 13 (Pl.'s Resp. to Def.'s First Set of Interrogatories).) She represents that she never opened the account, but rather, her husband opened the account in her name without her knowledge. (Doc. # 15-3, at ¶¶ 4–8 (Pl.'s Resp. to Def.'s First Set of Interrogatories).)[4] LVNV maintains that Ms. Prince never responded to mail or telephone calls from Zarzaur & Schwartz during the months of May, June, and July of 2012. (Aff. Ben Zarzaur, at 4.)

---

[3] The Affidavit, dated May 21, 2012, and signed by Tobie Griffin, an "Authorized Representative" of LVNV, states that Griffin has personal knowledge of LVNV's maintenance of its business records and accounts receivable. (Doc. # 15-2, at 7.) Griffin states that in the ordinary course of LVNV's business, it acquires credit accounts. On any given account, the original creditor provides LVNV with the debtor's name, social security number, account balance, original creditor name, and account number. The Affidavit represents that LVNV acquired an a credit account in the name of Fermer I. Prince, opened on September 1, 1996, first owned by Citibank, sold in a portfolio of debts to LVNV's assignor on August 19, 2010, and later assigned to LVNV. The amount owed is stated as $2,465.85. The Affidavit does not indicate when or from whom LVNV acquired the debt. There is also no indication in LVNV's affidavit that LVNV possessed any signed statement obligating Ms. Prince to repay the debt to Citibank or any other creditor.

[4] It does not appear that LVNV deposed Ms. Prince in this action, and the only record evidence of her positions on these issues are her responses to LVNV's interrogatories.

6

After LVNV filed the suit, Ms. Prince filed a *pro se* answer denying liability.  By the time the case came before the Montgomery County District Court on February 15, 2013, Ms. Prince retained counsel, Mr. William Azar, to dispute the suit.  Ms. Prince claims that LVNV offered no evidence to support its claim against her at trial, so judgment was entered in her favor.  Thus, she deduces, LVNV initiated the collection suit only to obtain either a default judgment or an agreement to pay a smaller sum of money because it lacked evidence to obtain a judgment against her for the amount sought.  Ms. Prince also alleges that LVNV lacks evidence that it even owns the debt, thereby affecting LVNV's standing to bring a collection action.

LVNV counters that it always had adequate evidence to win a judgment against Ms. Prince.  It explains that Zarzaur & Schwartz associated a local attorney, Mr. Richard Moxley, to appear at trial.  Mr. Moxley says that he knew that under the Alabama Rules governing Small Claims Courts, the Montgomery County District Court had discretion to accept LVNV's affidavit affirming its ownership of Ms. Prince's debt.  (Aff. Richard Moxley (citing Alabama Small Claims Rule J) (Doc. # 15-6, at ¶ 3).)[5]  Mr. Moxley further testifies that he expected to be able to cross-examine Ms. Prince as a trial witness with the account

---

[5] Rule J, which governs trials in Alabama's small claims courts, provides that "[t]he court may in its discretion receive sworn or written or recorded statements of witnesses or parties not present at trial."  Ala. Small Claims. R. J.  Ms. Prince's position is that LVNV could not prove its standing unless it brought a witness to trial to testify to LVNV's right to collect the debt.

information and account statements bearing her name and address.  Mr. Moxley expected the questioning to be fruitful because he and other attorneys are frequently able to get debtors to recognize and affirm a debt once presented with account statements in court.  (Aff. Richard Moxley (Doc. # 15-6, at ¶ 4); *see also* Doc. # 30, at 19–20 (Reply) (explaining LVNV's intent to maintain a claim for an "account stated".)  Mr. Moxley expected Ms. Prince's attendance at trial because she had been representing herself prior to trial.  But to Mr. Moxley's surprise, Mr. Azar appeared in the case minutes before trial and without Ms. Prince.  Mr. Moxley says he was therefore unable to elicit her testimony.  LVNV suggests that this tactic is the primary reason Ms. Prince won.

Ms. Prince counters that Mr. Moxley could have asked for, but did not ask for, a continuance so as to ensure Ms. Prince's attendance at a future trial hearing.  She points out that while Mr. Moxley could have presented the LVNV affidavit to support its ownership, Mr. Moxley did not offer it.  She suggests that this is because even if the district court had accepted the affidavit as evidence of LVNV's ownership of a debt owed by Ms. Prince, Ms. Prince could have appealed a judgment in favor of LVNV to circuit court, where the court would have conducted the trial *de novo* and rejected the affidavit.

**B.**    **Procedural History**

Ms. Prince filed this suit in federal court on June 28, 2013.  Her complaint alleges FDCPA violations for (1) making false, deceptive, or misleading representations in connection with collection of a debt in violation of 15 U.S.C. § 1692e; (2) using an unfair or unconscionable means to attempt to collect a debt in violation of 15 U.S.C. § 1692f; (3) misrepresenting the amount owed, in violation of 15 U.S.C. §§ 1692e(2)(A), § 1692e(10), and § 1692f; (4) threatening to collect and attempting to collect any amount which is not expressly authorized by an agreement creating the debt, in violation of §1692f(1); and (5) failing to verify that Ms. Prince owed the debt.  (Compl. at ¶ 26.)  The complaint also alleges that LVNV is liable for wanton or willful misconduct under state law.  (Compl. at ¶¶ 28–30.)  Ms. Prince seeks compensatory damages for the cost of defending the suit in state court and for her emotional injuries, FDCPA statutory damages of $1,000, punitive damages, and an award of her costs and attorney's fees.  (Compl. at ¶ 27, 30.)

## IV.  DISCUSSION

**A.**    **Ms. Prince's Motion to Strike**

### 1.    *Objections to Affidavits as Hearsay for Lack of Personal Knowledge*

Ms. Prince moves to strike affidavits and evidentiary materials from LVNV's motion for summary judgment, specifically:  (1) the Affidavit of LVNV,

prepared and submitted by Tonya Henderson, (2) the Affidavit of Ben Zarzaur, (3) the Affidavit of Richard Moxley, and (4) the exhibits referenced by and attached to each of the Affidavits.  (Doc. # 16.)[6]  Ms. Prince argues that each affidavit is based on hearsay in violation of the Rules of Evidence and that LVNV is attempting to use the affidavits to prove that Ms. Prince owes the debt.  With respect to Ms. Henderson's testimony on behalf of LVNV, Ms. Prince argues that the affidavit offends Federal Rule of Civil Procedure 56, which requires that affidavits be based upon personal knowledge.[7]

LVNV responds that the court need not analyze whether the affidavits and attached records pose a hearsay problem or fit a hearsay exception because none of the contested evidence or testimony is being offered for the truth of the matter asserted (*i.e.*, to prove that Fermer Prince owes a debt owned by LVNV).  (Doc. # 17, at 3.)  Rather, says LVNV, it offers the affidavit testimony and billing statements to establish LVNV's mindset and good faith belief in its right to sue Ms. Prince on the debt.  (*See* Doc. # 17 (citing *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 WL 395458, at *4 (N.D. Ill. Feb. 18, 2009) (holding

---

[6] These three affidavits are Exhibits A, B, and F, respectively, attached to LVNV's motion for summary judgment.  (*See* Docs. # 15-1, 15-2, 15-6.)

[7] Ms. Prince cites Rule 56(e).  Alabama's Rule of Civil Procedure 56(e)  provides that "[a]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  The governing Federal Rule equivalent for which Ms. Prince is searching is Fed. R. Civ. P. 56(c)(4).  ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

that hearsay in very similar FDCPA and malicious prosecution case was admissible because it was not offered for its truth)).); *see also* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement").  LVNV responds to Ms. Prince's Rule 56(c)(4) objection by arguing that debt-holding businesses like LVNV are not required to have personal knowledge of their assignors' maintenance of business records because such a requirement "would severely impair the ability of assignees of debt to collect the debt due."  (Doc. # 17, at 5–6 n.1 (citing *Krawczyk*, 2009 WL 395458, at *4).)

In reply, Ms. Prince contends that if LVNV acknowledges that its evidence of her debt is inadmissible hearsay, then "one can only conclude that LVNV [knowingly] initiated the collection suit" against Ms. Prince with inadmissible evidence.  (Doc. # 19, at 1.)  She further posits that the issue of whether she owed the debt has been decided conclusively by the small claims court – and she apparently believes that this precludes LVNV from defending that its collection action against her had arguable legal and factual merit.  (*See* Doc. # 19, at 2.)[8]

Upon consideration of the original motion to strike, which is treated as an objection, the court finds that the objection is due to be overruled.  The testimony about the debt is not offered to support the conclusion that Ms. Prince owed the

---

[8] LVNV was allowed to file a second response which reiterates its original arguments and rebuts Ms. Prince's positions.  (*See* Doc. # 24.)

debt, but rather, to support each affiant's knowledge and reasonable belief about LVNV's right to initiate a collection suit against Ms. Prince in state court.  To the extent that Ms. Prince objects that Ms. Henderson lacked personal knowledge about Citibank's maintenance of its records and accounts, *see* Fed. R. Civ. P. 56(c)(4), the objection is likewise due to be overruled.  Ms. Henderson's affidavit testimony is based on her personal knowledge of what information LVNV acquired from its assignor and why LVNV claims that it had no reason to doubt the veracity of the information.

### 2. *Motion to Strike Untimely Disclosed Expert Opinion Testimony*

Additionally, with leave of the court (*see* Doc. # 23), Ms. Prince has amended her motion to strike to include additional grounds for striking the Affidavits of Mr. Zarzaur and Mr. Moxley, (Doc. # 25).  Ms. Prince argues that the affidavits offer expert opinion testimony about each attorney's "professional judgment" about initiating the collection suit and proceeding to trial.  (*See* Docs. # 15-2, at ¶ 13; # 15-6, at ¶¶ 3, 5–6.)  She objects that LVNV did not disclose these witnesses as experts pursuant to Federal Rule of Civil Procedure 26(a)(2).

LVNV responds that Mr. Zarzaur and Mr. Moxley are fact witnesses, not expert witnesses.  (Doc. # 30.)  Additionally, LVNV emphasizes that Ms. Prince has known from the outset of this litigation that Mr. Zarzaur and Mr. Moxley

would be witnesses, and she cannot claim that she has been unfairly surprised or prejudiced by the affidavits.

Upon consideration of the parties' positions, the court finds that both Mr. Zarzaur and Mr. Moxley are testifying to their personal belief that LVNV had legitimate, good faith bases both to file the collection suit and to proceed to trial. Assuming *arguendo* that these are expert opinion testimonies within the ambit of Rules 702 and 703, the court nevertheless concludes that Ms. Prince's motion to strike is due to be denied because Ms. Prince has not shown how any failure to disclose expert opinion testimony has prejudiced her. *See* Fed. R. Civ. P. 37(c)(1) (allowing a party to use undisclosed expert testimony if the failure to disclose was "harmless"). Moreover, the parties are cautioned that by this ruling, the court does not prejudge the admissibility of any of this evidence at trial if offered through "live" testimony.

**B.   LVNV's Motion to Strike Mr. Azar's Affidavit**

LVNV moves to strike Mr. Azar's affidavit filed in support of Ms. Prince's opposition to summary judgment. (*See* Azar Aff. (Doc. # 26-2).) LVNV objects that Mr. Azar's testimony is not based on his personal knowledge and that it includes legal conclusions. (Doc. # 29, at 2–6.) Additionally, LVNV asserts that rules of ethics and professional responsibility counsel against permitting Mr. Azar to offer testimony in his client's favor, particularly at trial. (*See* Doc. # 29, at 7–9.)

Ms. Prince responds that his testimony is based upon personal knowledge and experience.  (*See* Doc. # 35.)  Further, Ms. Prince does not believe any rule of professional conduct bars her attorney from submitting an affidavit in opposition to summary judgment, but she represents that if the court must grant LVNV's motion to strike, substitute counsel can appear without delaying the scheduled trial.  (Doc. # 35, at 4–5.)

LVNV is right that the much of Mr. Azar's testimony is based on his assignment of bad motives to LVNV, their attorneys, and others who participate in collection suits like the one filed against Ms. Prince.  His testimony also couches occasional legal conclusions as personal knowledge.  For these reasons, LVNV's objections normally would be due to be sustained to the extent that Mr. Azar's affidavit testimony is not based on personal knowledge or which invades the court's role of deciding the law.  However, the court will overrule the objections as moot because the court has not relied upon Mr. Azar's affidavit in reaching its decision to deny LVNV's motion for summary judgment.[9]

## C.   <u>**Motion for Summary Judgment**</u>

LVNV requests the entry of summary judgment in its favor on Ms. Prince's FDCPA and state-law claims.  (Doc. # 15.)  It attacks Ms. Prince's alleged inability

---

[9] If Ms. Prince intends to call Mr. Azar as a witness at trial to testify to a contested issue, *see* Ala. R. Prof. Cond. 3.7, LVNV may raise its objection again prior to trial.  Again, the parties are warned that the court makes no finding at this juncture whether this evidence, if offered "live" at trial, is admissible.

to prove a state law tort before arguing that there is no evidence to support an FDCPA violation.

### 1.   *Wanton or Willful Misconduct*

LVNV argues that "[r]egardless of the terms [Ms. Prince] uses, the legal cause of action stated in Count II is one for malicious prosecution."  (Doc. # 15, at 11.)  According to LVNV, "Alabama law does not recognize a cause of action for general willfulness and wantonness" under the circumstances of this case. (Doc. # 15, at 13.)  LVNV then proceeds to argue for summary judgment on a malicious prosecution claim that Ms. Prince has not pleaded.  (Doc. # 15, at 12– 23.)  To preface its defense of any malicious prosecution claim, LVNV likens Ms. Prince's case to *Cutts v. American United Life Insurance Company*, 505 So. 2d 1211 (Ala. 1987).  In *Cutts*, the plaintiff sued its insurer for "intentionally, willfully, and wantonly" providing incomplete or inaccurate information to state investigators which led to the plaintiff's wrongful indictment for theft of property against the plaintiff's employees.  *Id.* at 1212–13.  The Alabama Supreme Court concluded that there was no precedent "which recognizes a cause of action for negligently, or even intentionally, willfully, or wantonly, failing to produce information in response to a district attorney's request."  *Id.* at 1214.  The Court then reasoned that if the plaintiff's complaint stated a claim at all, it was for malicious prosecution.  *Id.*  The Court then analyzed the claim accordingly.

In the event that this court accepts LVNV's argument, Ms. Prince counters LVNV's arguments on malicious prosecution. (*See* Doc. # 26, at 10.) But she holds firm and contends that her wanton and willful misconduct claim "is not simply a variation of a claim for malicious prosecution." (Doc. # 26, at 9.) In support of her position, Ms. Prince cites Alabama Code § 6-11-20(a)(3), a statute setting out the circumstances under which punitive damages may be awarded in a civil action generally, and the tortious conduct that constitutes "wantonness" specifically.[10] She also directs the court to *Webb v. Midland Funding, LLC*, No. 2:12-CV-2920-KOB, 2013 WL 360151 (N.D. Ala. Jan. 29, 2013). In *Webb*, the Northern District of Alabama held that a plaintiff who sued a defendant for bringing a debt collection action against her for a debt that the defendant allegedly knew she did not owe stated a claim for "wanton and intentional harm" under Alabama law. *Id.* at *4 (citing *Roberts v. Brown*, 384 So. 2d 1047, 1048 (Ala. 1980)). A claim for wantonness involves "the conscious doing of some act" with knowledge that an "injury will likely or probably result." *Roberts*, 384 So. 2d at 1048.[11] Thus, Ms. Prince asserts that LVNV must defend against her allegations

---

[10] The statute, of course, only defines the sort of wanton conduct for which punitive damages may be awarded. It does not define a claim for willful or wanton misconduct.

[11] Wantonness may also consist of a defendant's "inadvertent failure to act . . . with knowledge that someone is probably imperiled" by the inaction. *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988). LVNV's inaction is not at issue in this case.

that it willfully and wantonly sued her to collect a debt without sufficient evidence and without regard to the harm the suit would cause her.

The court agrees with Ms. Prince that she has pleaded a cognizable tort for wanton and willful misconduct under Alabama law.  *See Webb*, 2013 WL 360151, at *4.  Ms. Prince's case is distinguishable from the facts underlying the *Cutts* opinion cited by LVNV.[12]  Furthermore, it is significant that there is no malicious prosecution claim articulated in Ms. Prince's Complaint.  LVNV may not recast the wanton and willful misconduct claim into one for malicious prosecution, which is admittedly more difficult for the plaintiff to prove and "disfavored in the law." *Cutts*, 505 So. 2d at 1214.

In its reply brief, LVNV argues that Ms. Prince has not offered admissible evidence to support a claim for wantonness.  (Doc. # 31, at 23.)  The court disagrees.  Plaintiff has shown, and LVNV does not dispute, that LVNV lacks a written agreement obligating Ms. Prince to pay it a debt, and it lacks documentary evidence beyond its own affidavits proving its ownership of a debt owed by Ms. Prince.  While the affidavit might have sufficed in small claims court, it appears that it would not have sufficed in circuit court.  Further, LVNV failed to present

---

[12] *Cutts* involved a civil defendant's failure to completely and accurately respond to a state investigation so as to exculpate the civil plaintiff and relieve him from further criminal investigation and indictment.  The civil defendant did not instigate the state investigation; rather, it was approached by the district attorney upon complaints by third parties.  That scenario is distinct from the facts of this case, where the LVNV undertook to bring a civil action against Ms. Prince when it arguably lacked admissible evidence to support a judgment in its favor.

any testimony or evidence in support of its collection suit at trial, and judgment was entered in Ms. Prince's favor.  LVNV has not credibly contested these facts. There is a significant disputed fact as to whether LVNV consciously initiated the debt collection suit in bad faith with knowledge that the suit would injure Ms. Prince.   A jury could infer from the facts detailed above that LVNV acted wantonly.  Therefore, LVNV's motion for summary judgment is due to be denied as to Ms. Prince's state-law claim for wanton and willful misconduct.

### 2.   *FDCPA*

LVNV also argues that it is entitled to summary judgment because Ms. Prince cannot prove a violation of the FDCPA.  LVNV disputes that if the facts alleged were proven true, that they would constitute FDCPA violations.   But instead of attacking the allegations as being inadequate to support a claim, LVNV defends itself on the grounds that Ms. Prince's allegations are "demonstrably false."  (Doc. # 15, at 24.)  Even though LVNV's frames its summary judgment argument on the veracity of the facts, the court first will discuss whether Ms. Prince's claims are legally cognizable before considering LVNV's assertions about the insufficiency of the facts.

### a.   § 1692e:  False, Deceptive, and Misleading Representations

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation[s] or means in connection with the collection of any

debt."   15 U.S.C. § 1692e.   "Without limiting the general application" of that general rule,[13] the FDCPA also sets out sixteen specific instances of debt collection conduct that violates the principle.   *See id*. at § 1692e(1)–16.   Ms. Prince alleges that LVNV violated § 1692e's general principle, quoted above, as well as § 1692e's specific provisions against misrepresenting the amount of the debt owed, in violation of §§ 1692e(2)(A) and 1692e(10).[14]

### b.   § 1692f:   Use of Unfair or Unconscionable Means

Section 1692f of the FDCPA prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."   *Id.* at §1692f. It has been described by some courts as "a catchall for conduct that is recognizably unfair, but not explicitly enumerated in other sections of the FDCPA."   *Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589, 601 (E.D. Pa. 2012).   Like Section 1692e, the statute sets out specific instances of conduct that violate the general principle without making the list an exclusive set of circumstances constituting FDCPA violations.   *See id.* at §1692f(1)–(8) (setting out specific

---

[13] "Congress recognized that it would be impossible to foresee every type of deceptive collection misbehavior and expressly provided this general standard to give courts the flexibility to proscribe improper conduct not specifically anticipated and addressed in the Act."   Robert J. Hobbs, et al. 1 Fair Debt Collection § 5.5.2.2 p. 216 (7th ed. 2011) (citing S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698).

[14] It is not clear whether Ms. Prince invokes §§ 1692e(2)(A) and 1692e(10) because she believes that the amount owed is actually $0, or because she believes that the amount" owed should be less than what LVNV sought in state court ($2,465.85, plus costs).   Because she says she is not liable for any debt, the court presumes that Ms. Prince is alleging that LVNV violated the FDCPA by falsely representing that she owed *any* debt.

conduct constituting unfair and unconscionable means); S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.").  Ms. Prince claims that LVNV violated the general spirit of § 1692f, as well as § 1692f(1) specifically, which provides that a debt collector may not collect any amount from a debtor "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[15]

### c.    Similar Cases Brought Pursuant to §§ 1692e & 1692f

In recent years, federal district courts across the country, including some in the Eleventh Circuit, have been willing to allow plaintiffs to bring suits for violations of § 1692e under circumstances similar to this case.  *See*, *e.g.*, *Hinten v. Midland Funding, LLC*, No. 2:13 CV 54 DDN, 2013 WL 5739035, at *7 (E.D. Mo. Oct. 22, 2013) (assuming truth of allegation that "defendant could not have legally prevailed in these lawsuits from the time of their commencement," plaintiffs stated a claim for violation of § 1692e); *Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1331 (S.D. Ala. 2013) (assuming without deciding that FDCPA's § 1692e or § 1692f supported the plaintiff's FDCPA cause of action where the plaintiff alleged that the defendant filed suit "with full knowledge it

---

[15] Ms. Prince appears to assert that LVNV lacks evidence of Ms. Prince's agreement creating the debt, and thereby supporting the amount she allegedly owes.

would not (and therefore could not) prove its claim"); *Simmons v. Portfolio Recovery Assocs., LLC*, No. 3:11-CV-280, 2012 WL 222935, at *5 (E.D. Tenn. Jan. 25, 2012) (denying motion to dismiss FDCPA claims arising under § 1692e or § 1692f where plaintiff alleged that defendant "supported [a collection suit with] an affidavit that contained false or deceptive representations about the status or character of the underlying debt" and engaged in "a pattern and practice of filing similar lawsuits"); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1302–03 (N.D. Ga. 2010) (allowing claims to proceed under §§ 1692e and 1692f based on allegations that defendant engaged in pattern of abusive litigation by bringing collection suits with no intention of proceeding to a trial on the merits); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1021–24 (S.D. Ohio 2007) (denying motion to dismiss and finding cognizable claim under § 1692e or § 1692f where law firm-defendant allegedly sued plaintiff without documents to verify the truth of its client's affidavit that was not based on personal knowledge); *see also Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488–89 (M.D. Ala. 1987) (granting plaintiff's motion for summary judgment on § 1692e and § 1692f where debt collector sued plaintiff on stale claims which were clearly barred by the statute of limitations).[16]

---

[16] LVNV attempts to distinguish the instant case from each of these opinions in its reply brief. (*See* Doc. # 31, at 34–43.)

Although there is no Eleventh Circuit precedent available that is directly on point, these district court decisions are consonant with the Supreme Court's holding in *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995), that "the [FDCPA] applies to . . . consumer-debt-collection activity, even when that activity consists of litigation." *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010) (acknowledging *Heintz*'s holding that "initiation of legal proceedings by a creditor can constitute a debt collection activity"). The decisions also align with Congress's express intent to proscribe abusive debt collection activities and its stated assumption that federal courts would use the FDCPA's more general provisions to prohibit abusive tactics not specifically enumerated in the FDCPA.

Unfortunately, with the exception of *Kimber*, each of the district court cases cited *supra* discusses the sufficiency of pleadings rather than the sufficiency of evidence at summary judgment. But assuming that Ms. Prince can meet her evidentiary burden, her claims are actionable under the FDCPA, notwithstanding LVNV's contention that they are not.

### d. Whether LVNV's Good Faith is a Defense

Before addressing the facts in dispute, the court will confront an issue that begs for clarity. The FDCPA contemplates strict liability for offending debt collectors. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1362 (S.D. Fla.

22

2000) ("Nowhere in the language of the statute . . . [including §§ 1692e and 1692f] . . . is there any mention of an element of knowledge or intent."); *LeBlanc*, 601 F.3d at 1190 ("The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute.").[17] LVNV points out the strict liability nature of the FDCPA for the first time in its reply brief. (*See* Doc. # 31, at 19, 44.) The briefing from both parties suggests that they agree that a defendant debt collector may avoid liability under §§ 1692e or 1692f if the defendant can demonstrate that it brought a collection suit in good faith. LVNV seems to suggest that *Ms. Prince* must prove that LVNV sued her with knowledge that it lacked evidence to procure a judgment, but if such a good faith defense is in play in this case, it would appear that *LVNV* must prove that it proceeded in good faith. *Cf.* 15 U.S.C. § 1692k(c) (requiring a debt collector which advances a "bona fide error" defense to show by a preponderance of evidence that the violation was not intentional).

Because collection suits are not intrinsically unlawful under the FDCPA or otherwise, the court is inclined to agree that a "good faith" defense is viable. But the court finds that LVNV must prove, *i.e.*, bear the burden of proof, that it initiated suit against Ms. Prince in good faith.

---

[17] Assuming that the plaintiff shows a violation of the FDCPA, he must then show that the "least sophisticated consumer" would have been deceived or misled by the defendant's representations or actions. *LeBlanc*, 601 F.3d at 1103–04, 1200–01; *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). This standard is not discussed by either party.

### e.     Whether LVNV Satisfies Its Burden Under Rule 56(a)

LVNV asserts that the evidence that it provided to Zarzaur & Schwartz before the collection suit was filed – namely, its May 21, 2012 affidavit affirming its ownership of a debt owed by Fermer Prince, and several months' worth of credit card account statements bearing Ms. Prince's name and address – was adequate to support its collection action.  LVNV further claims that its counsel, Mr. Zarzaur and Mr. Moxley, both subjectively believed that this evidence, supplemented by an admission or affirmation of the debt by Ms. Prince at trial, would suffice to sustain a judgment in small claims court.  Hence, LVNV argues that Ms. Prince cannot show how its collection action against her violates either § 1692e or § 1692f.

Ms. Prince counters by highlighting the evidence that LVNV lacked when it sued her – for instance, a bill of sale showing its ownership of Ms. Prince's account (*see* Doc. # 26-3 (incomplete bill of sale between Citibank and Sherman Originator III LLC)),[18] any document signed by Ms. Prince applying for credit through Citibank, or any document signed by Ms. Prince obligating her to pay a debt.  She emphasizes that when push came to shove, LVNV did not produce the evidence it needed to support a judgment against her, and therefore, the small

---

[18] *See Gigli v. Palisades Collection, L.L.C.,* No. 3:CV-06-1428, 2008 WL 3853295, at *10 (M.D. Pa. Aug. 14, 2008) (finding that a reasonable jury could conclude an account was not assigned pursuant to a purchase agreement or bill of sale where the list of accounts transferred was "conspicuously absent from the record").

claims court entered judgment in her favor.   (*See* Doc. # 26-5 (Order of Montgomery County District Court).)

In its reply brief, LVNV pretends that a fact finder could not view the evidence in Ms. Prince's favor and forgets the court's obligation to resolve questions of fact in favor of the non-moving party at summary judgment.   It accuses Ms. Prince of resting on her allegations rather than producing any rebuttal evidence.   (Doc. # 31, at 30.)   However, LVNV fails to acknowledge that its evidence has not credibly contradicted the essence of Ms. Prince's allegations against it, most of which are not difficult to discover or prove, such as what evidence LVNV lacked from the outset to succeed on its collection suit, whether it presented evidence at trial when it had the opportunity to prove its case, and whether Ms. Prince ultimately prevailed.

In view of the evidence and the parties' competing theories of whether LVNV initiated suit and proceeded to trial in bad faith, the issue of LVNV's intent is a question of fact that needs to be resolved at trial because a reasonable jury could infer bad faith from the evidence.   Similarly, the issues of whether LVNV misrepresented, intentionally or unintentionally, the amount owed in violation of § 1692e(2) and whether LVNV attempted to collect an amount not "authorized by the agreement creating the debt" in violation of § 1692f(1) remain in dispute. Hence, LVNV fails to meet its burden under Rule 56 of showing its entitlement to

25

judgment as a matter of law.  For these reasons, the court finds that the motion for summary judgment is due to be denied with respect to the FDCPA claims.

## V.  CONCLUSION

In accordance with the foregoing findings, it is ORDERED that:

(1)   Ms. Prince's motion to strike certain affidavit testimonies (Doc. # 16), as amended (Doc. # 25), is DENIED.  The motion is treated as an objection to the admission of certain affidavits as evidence.  The objections raised in Ms. Prince's motion are OVERRULED.

(2)   LVNV's motion to strike the Affidavit of William Azar (Doc. # 29) is likewise DENIED, and the motion is treated as an objection to the admission of the affidavit.  LVNV's objections raised in the motion are OVERRULED as moot because the court has not relied on Mr. Azar's affidavit in deciding Defendant's motion for summary judgment.

(3)   Defendant's motion for summary judgment (Doc. # 15) is DENIED.

DONE this 24th day of June, 2014.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE